STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

David J. Bodney (006065)
Dennis K. Blackhurst (021678)
Attorneys for Defendants/Counterclaimants
Regan Media, Inc. and Judith Regan

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JENNA MASSOLI p/k/a JENNA JAMESON, | No. CV 05-0854 PHX EHC |
| Plaintiff, | **SUR-RESPONSE IN OPPOSITION TO PLAINTIFF/ COUNTERDEFENDANTS' RULE 56(F) MOTION** |
| vs. | |
| "REGAN MEDIA," and JUDITH REGAN, an individual, | [Oral Argument Requested] |
| Defendants. | |
| REGAN MEDIA, INC., a New York corporation, and JUDITH REGAN, an individual, | (Assigned to the Honorable Earl H. Carroll) |
| Defendants/Counterclaimants, | |
| vs. | |
| JENNA MASSOLI p/k/a JENNA JAMESON, an individual, | |
| Plaintiff/Counterdefendant, | |
| and | |
| JAY GRDINA, an individual, | |
| Third-Party Counterdefendant. | |

**Preliminary Statement**

In a desperate attempt to avoid the repercussions of her clear breach of an unambiguous contract, Plaintiff/Counterdefendant Jenna Massoli p/k/a Jenna Jameson ("Jameson") and Third-Party Counterdefendant Jay Grdina have filed a reply brief that at the last minute seeks to introduce new facts – facts that directly contradict all of their pleadings to date. The Court should recognize the tactic for what it is: a disingenuous attempt to create confusion in order to convince the Court that discovery is somehow necessary before the Court can rule on Defendants' Rule 12(c) Motion, which by its terms is based solely on the pleadings.

Jameson initiated this litigation by seeking a declaratory judgment that her Agreement with Regan Media "has no applicability to any project or agreement entered into between Plaintiff or her associated companies and A&E for production of a reality based television show…"[1] Explicit in Jameson's request, and still completely undisputed, is the fact that Jameson has agreed to participate in a reality television series being produced by A&E. Faced with Defendants' Rule 12(c) Motion for Judgment on the Pleadings, Jameson now pretends -- for the first time in her reply brief -- that *she* did not contract with A&E, instead pressing a frivolous distinction that it was really Dolce Amore, Inc. ("Dolce Amore") that entered into the A&E Contract, and that discovery will be

---

[1] *See* Complaint for Declaratory Relief ("Complaint") at 5. Jameson based her Complaint not on the grounds that she did not personally enter into the A&E Contract – she conceded that fact – but that the A&E Contract was not encompassed by the Agreement because her negotiations allegedly pre-dated the Agreement. [*See id.* ¶ 17; Jameson's Reply to Amended Counterclaim at ¶ 17-20, 22 ("the A&E Contract was not subject to the Agreement because the negotiations for the A&E Contract pre-dated the Agreement between Massoli and Regan").]

2

necessary to investigate Jameson's relationship with Dolce Amore. This new argument is not only a transparent tactic to create confusion where none exists, but it blatantly contradicts statements made in practically every substantive paper Jameson has filed with the Court. Regardless, the new arguments pressed by Jameson are irrelevant because they do not change the indisputable fact that Jameson breached her Agreement by personally contracting to participate in the A&E project without involving Regan and Regan Media.

### 1. Jameson admits in her pleadings that she contracted with A&E.

In her Reply, Jameson asserts for the first time that *she* did not actually contract with A&E, instead arguing that Dolce Amore, her "employer," contracted with A&E. [*See* Reply at 3.] Ignoring the impropriety of raising such an theory for the first time in a reply brief,[2] this argument is completely unavailing for a number of reasons. First, contrary to Jameson's argument, Defendants' Rule 12(c) Motion for Judgment on the Pleadings is not based on the A&E Contract, but on Jameson's pleadings, wherein Jameson specifically "ADMITS so much of the allegations set forth in paragraph 17 of the Counterclaim which alleges that Massoli [Jameson] entered into a contract with A&E." [Jameson's Reply to Amended Counterclaim ¶ 17.] This constitutes a binding judicial admission that Jameson contracted with A&E, and Jameson cannot change her story now to conjure an issue of fact that would require discovery. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("admissions in the pleadings are generally binding on the parties

---

[2] Jameson asserts two new arguments in her Reply brief, in Section I (at pp. 2-4) and Section IIID (at p. 10). This Sur-Response addresses only those two sections.

3

and the Court. . . . Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them").

Further, it has been abundantly clear in every substantive paper filed in these proceedings that Jameson personally agreed with A&E to participate in a reality series based upon her life, regardless of what entity is on the official A&E Contract:

> "…in November 2004 Grdina and Massoli eventually executed a contract with A&E. That contract was obtained solely and exclusively through the efforts of Massoli and her husband…" [Jameson's Rule 56(f) Motion at 4];

> Jameson "ADMITS so much of the allegations set forth in paragraph 17 of the Counterclaim which alleges that Massoli entered into a contract with A&E." [Jameson's Reply to Amended Counterclaim ¶ 17];

> Grdina "ADMITS so much of the allegations set forth in paragraph 17 of the Counterclaim which alleges that Massoli entered into a contract with A&E." [Grdina's Reply to Amended Counterclaim ¶ 17];

> "Between October 2003 and April 1, 2004, plaintiff [Jameson] and AETN continued to be involved in negotiations regarding a reality based television series to be aired on AETN. In connection with the negotiation, plaintiff and her associates created a theme for the project, pitched the project to AETN, and exchanged proposals with AETN regarding various aspects of the production. As a result of plaintiff's activities, and the efforts of her husband Jay Grdina, plaintiff's company entered into an agreement with A&E for plaintiff's participation in a reality based television series." [Jameson's Complaint for Declaratory Relief ¶¶ 5-6];

> "The execution of the contract between A&E and Plaintiff's company was obtained solely and exclusively through the efforts of Plaintiff and her associates, without any contribution, assistance or participation from defendants." [Jameson's Complaint for Declaratory Relief ¶ 15];

> In the relief requested in her Complaint, Jameson requests a declaration that the Agreement with Regan Media "has no applicability to any project or agreement entered into between Plaintiff or her associated companies and A&E for production of a reality based television show…" [Jameson's Complaint for Declaratory Relief at 5.]

4

In view of the foregoing pleadings, Jameson cannot pretend that she has not violated the terms of the Agreement with Regan and Regan Media. Jameson's suggestion that the A&E Contract bound Dolce Amore, but not Jameson, is a dishonest attempt to confuse the Court. In addition, the mere fact that Jameson may have negotiated the A&E Contract through Dolce Amore is itself a breach of the Agreement, which gives Regan Media exclusive rights to pitch and negotiate the reality series project and prevents Jameson from encumbering any rights to such a project without consulting Regan and Regan Media.[3]

Similarly, in another effort to create an issue of fact, Jameson pretends that there is a fact issue as to whether Jameson controls Dolce Amore, despite her repeated admissions that she and "her company" contracted with A&E. [*See* Complaint ¶ 6 ("plaintiff's company entered into an agreement with A&E"); *id.* ¶ 15 ("The execution of the contract between A&E and Plaintiff's company . . ."); Jameson's Rule 56(f) Motion at 3 ("Massoli's company entered into an agreement with A&E for Massoli's participation in a television series").] It is immediately apparent from Jameson's earlier pleadings that she considers herself and Dolce Amore to be one and the same and has only now concocted a legal fiction in an attempt to create an issue of fact.

Even if one accepts the bogus distinction that it was really Dolce Amore that contracted with A&E, the fact remains that there could be no reality series based on

---

[3] *See* Agreement ¶ 1 ("Regan Media shall have the exclusive right to pitch, submit and represent each Project to television networks, motion picture studios and other potential financiers"); ¶ 6 ("Neither party shall proceed with the further development, production, distribution and/or other exploitation of any Project, or option, license, sell or otherwise dispose of or encumber any rights in and to any Project, unless and until both parties have agreed to all the terms and conditions").

5

Jameson's life without Jameson's participation. Jameson's Agreement with Regan Media clearly requires the mutual approval and agreement of Jameson, Regan and Regan Media before any party could pursue the "further development, production, distribution and/or other exploitation of any Project."[4] Jameson has never denied that she is participating in a reality series project with A&E, and she admits that she did not involve Regan and Regan Media in that project. Whether Jameson contracted with Dolce Amore[5] or directly with A&E, she contracted with another party for the rights Regan and Regan Media bargained for in the Agreement, and by doing so breached her Agreement with Regan Media. No amount of discovery can affect that conclusion.

**2. Jameson's personal breach of the Agreement with Regan Media is demonstrated in the A&E Contract.**

Finally, regardless of all of the above, Jameson's breach of her Agreement with Regan Media is conclusively shown in the A&E Contract because Jameson herself signed it and affirmed all of Dolce Amore's obligations. Attached to the A&E Contract is an "Artist's Letter of Inducement," executed by Jameson personally, in which she agrees to and affirms all of the terms of the A&E Contract:

---

[4] *See* Agreement ¶ 4 ("As between Jameson and ReganMedia, all creative and business decisions with respect to each Project . . . shall be subject to the mutual approval of both parties"); ¶ 6 ("Neither party shall proceed with the further development, production, distribution and/or other exploitation of any Project, or option, license, sell or otherwise dispose of or encumber any rights in and to any Project, unless and until both parties have agreed to all the terms and conditions").

[5] The A&E Contract itself evidences Jameson's contract with Dolce Amore, reciting the fact that Jameson entered into an "Exclusive Acting Services Agreement" with Dolce Amore "to provide on-camera/on air acting services in connection with the production of a reality-based television series." [*See* A&E Contract at 1, attached as Exhibit A to Jameson's Reply brief.]

6

> the undersigned hereby consents and agrees to the execution and delivery of said Agreement by Company and hereby agrees to render all the services therein provided to be rendered by the undersigned, to grant all the rights granted therein, and to be bound by and duly to perform and observe each and all of the terms and conditions of said Agreement regarding performance or compliance on the undersigned's part, and hereby joins in all warranties, representations, obligations, agreements and indemnities made by Company, and further confirms the rights granted AETN under said Agreement . . .

In light of Jameson's explicit, personal participation in the execution and negotiation of the A&E Contract and the uncontested fact that she plans to be the primary participant in the A&E project, there is no question that she breached her Agreement with Regan Media. Her signature on the Artist's Letter of Inducement evidences the fact that Jameson proceeded with the development of the A&E project and encumbered her rights to a reality-based television program without the agreement of Regan and Regan Media.[6] The conceded fact that Regan and Regan Media were not included in the A&E project establishes Jameson's breach of the Agreement without the need for additional discovery.

### 3. The Agreement clearly and unambiguously encompasses the A&E Contract.

Almost as an afterthought, Jameson now contends for the first time that the term "any similar projects" is ambiguous and requires discovery to establish its meaning. Once again, Jameson is trying to create an ambiguity where none exists. There is no question that the Agreement specifically defines within its scope a "one hour special" and a "reality-based television program." [*See* Agreement Exhibit A.] It is also undisputed that

---

[6] *See* Agreement ¶ 6 ("Neither party shall proceed with the further development, production, distribution and/or other exploitation of any Project, or option, license, sell or otherwise dispose of or encumber any rights in and to any Project, unless and until both parties have agreed to all the terms and conditions").

7

the A&E Contract concerns the development of a reality based television program. Jameson cannot possibly argue in good faith that it is unclear whether the Agreement covers the A&E Contract. Jameson's speculation about whether a theoretical "film docudrama" is encompassed within the Agreement has nothing to do with this dispute and does nothing to create an ambiguity in the explicit language of the Agreement.

### 4. The Court should grant Defendants' Rule 12(c) Motion to avoid further delay.

The real goal of Jameson's Rule 56(f) Motion -- and her decision to spring new arguments and documents in her Reply -- is delay. Defendants filed their Rule 12(c) Motion for Judgment on the Pleadings because Jameson admitted in her pleadings that she personally contracted with A&E without consulting or involving Regan or Regan Media. In her Reply in support of a baseless Rule 56(f) Motion, Jameson sandbagged Defendants with a frivolous argument that contradicted her previous admissions and the unavoidable facts established in the pleadings. She has also promised to file a new motion this week relating to the applicable law, an argument which should have been made, if at all, in her response to Defendants' Rule 12(c) Motion for Judgment on the Pleadings. Finally, Jameson requests that if the Court denies her Rule 56(f) Motion, she be given another 10-day bite at the apple to prepare another response to Defendants' Rule 12(c) Motion, despite the fact that the arguments related to her Rule 56(f) Motion are dispositive of Defendants' Rule 12(c) Motion. Jameson is simply dragging out these proceedings. Her baseless Rule 56(f) Motion should be denied, and judgment should be entered on Defendants' Rule 12(c) Motion without another useless round of briefing.

8

1 | Respectfully submitted this 18th day of August, 2005.
2 | STEPTOE & JOHNSON LLP

4 | By s/David J. Bodney
5 | David J. Bodney
 | Dennis K. Blackhurst
 | Collier Center
6 | 201 East Washington Street, Suite 1600
 | Phoenix, Arizona 85004-2382

Attorneys for Defendants/
Counterclaimants Regan Media, Inc. and
Judith Regan

CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2005, I cause the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electric Filing to the following CM/ECF Registrants:

>James L. Blair
>Roger William Hall
>Renaud Cook Drury Mesaros, PA
>Phelps Dodge Tower
>One North Central, Suite 900
>Phoenix, AZ  85004-4417
>
>*Attorneys for Plaintiff/Counterdefendant and*
>*Third-Party Counterdefendant*

I hereby certify that on the 18th day of August, 2005, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

>Bernard M. Brodsky
>Jeffrey F. Reina
>Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP
>42 Delaware Avenue, Suite 300
>Buffalo, NY  14202-3857
>
>*Attorneys for Plaintiff/Counterdefendant and*
>*Third-Party Counterdefendant*

　　　　　　　　　　　　　　s/Lisa Morgan
　　　　　　　　　　　　　　Lisa Morgan　　　　476721