James L. Blair, #016125
Roger W. Hall, #013727
RENAUD COOK DRURY MESAROS, PA
Phelps Dodge Tower
One North Central, Suite 900
Phoenix, Arizona 85004-4417
(602) 307-9900
jblair@rcdmlaw.com
rhall@rcdmlaw.com
*Attorneys for Plaintiff/Counterdefendants*

Jeffrey F. Reina (Pro Hac Vice)
Lipsitz, Green, Fahringer
Roll, Salisbury & Cambria, LLP
42 Delaware Avenue, Ste 300
Buffalo, NY 14202-3857
(716) 849-1333
jreina@lglaw.com
*Attorneys for Plaintiff/Counterdefendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| JENNA MASSOLI p/k/a JENNA JAMESON,<br><br>            Plaintiff,<br><br>v.<br><br>"REGAN MEDIA," JUDITH REGAN, as an individual,<br><br>            Defendant.<br><br>REGAN MEDIA, INC., a New York corporation, and JUDITH REGAN, an individual,<br><br>            Defendants/Counterclaimants,<br><br>v.<br><br>JENNA MASSOLI, p/k/a JENNA JAMESON, an individual,<br><br>            Plaintiff/Counterdefendant,<br><br>and<br><br>JAY GRDINA, an individual,<br><br>            Third-Party Counterdefendant. | CV 05-0854 PHX EHC<br><br>**REPLY TO SUR-RESPONSE IN OPPOSITION TO PLAINTIFF/ COUNTERDEFENDANTS' RULE 56(f) MOTION**<br><br>(*Assigned to the Honorable Earl H. Carroll*) |

Pursuant to this Court's order of August 17, 2005, plaintiff/counterdefendant Jenna Massoli and counterdefendant Jay Grdina (collectively, "Plaintiffs") hereby file this Reply to the Sur-Response in Opposition to Plaintiff/Counterdefendants' Rule 56(f) Motion ("Sur-Response") filed by defendants/counterclaimants Judith Regan and Regan Media, Inc. (collectively, "Defendants").

**I.   Preliminary Statement.**

Although Defendants claim that Plaintiffs' Reply to Defendants/Counterclaimants' Response in Opposition to Plaintiff/Counterdefendants' Rule 56(f) Motion (the "Reply") is a "desperate attempt," it is Defendants who seem truly desperate, since the plain language of the A&E Contract completely guts the arguments made in their Rule 12(c) Motion for Judgment on the Pleadings and Memorandum in Support thereof (collectively, the "Rule 12(c) Motion"). That desperation is shown in their Sur-Response, which resorts to outright falsehoods and blatant mischaracterizations of Plaintiffs' arguments and filings in a grasping attempt to hold onto the impotent argument that their Rule12(c) Motion is somehow worthy of being granted.

**II.   Plaintiffs' Reply Did Not Introduce Any New Facts.**

Defendants claim that Plaintiffs "have filed a reply brief that at the last minute seeks to introduce new facts."[1] That is patently false.

As explained in Plaintiffs' Response to Motion for Leave to File Sur-Response in Opposition to Plaintiff/Counterdefendants' Rule 56(f) Motion ("Response to Motion for Leave"), plaintiff Jenna Massoli's original complaint states, on two separate occasions, that the A&E Contract was signed by a corporate entity and not by Massoli herself:

> As a result of plaintiff's activities, and the efforts of her husband Jay Grdina, *plaintiff's company* entered into an agreement with A&E for plaintiff's participation in a reality based television series.[2]

---

[1] Sur-Response, p. 2, lines 4½-5½.

[2] Complaint, paragraph VI (emphasis added).

The Complaint also states that:

> The execution of the contract between A&E and *Plaintiff's company* was obtained solely and exclusively through the efforts of Plaintiff and her associates, without any contribution, assistance or participation from defendants.[3]

Plaintiffs' Rule 56(f) Motion, which was the first document filed by Plaintiffs after the close of the pleadings, contains a similar assertion:

> As a result of the activities of her husband and herself, in November 2004 Massoli's company entered into an agreement with A&E for Massoli's participation in a television series.[4]

In spite of those repeated assertions that one of Massoli's companies, and not Massoli herself, entered into the A&E Contract, Defendants claim that Plaintiffs' Reply is "a disingenuous attempt to create confusion."[5]

It is not Plaintiffs, but rather defendants Judith Regan and Regan Media, Inc. ("Regan Media") that are being "disingenuous" and "attempt[ing] to create confusion" by deliberately trying to twist Plaintiffs' clear assertions that a corporate entity signed the A&E Contract into something totally different; that is, some kind of "admission" that Massoli herself signed the A&E Contract. Defendants then have the audacity to attempt to use that completely fabricated "admission" as a basis for seeking judgment on the pleadings.

This Court should not countenance such tactics. The A&E Contract, on its face, was clearly between A&E and Dolce Amore, Inc. ("Dolce Amore"), *not* between A&E and Massoli. For any other conclusion to be drawn, discovery must be taken.

///

///

---

[3] Complaint, paragraph XV (emphasis added).

[4] Rule 56(f) Motion, p. 3, lines 1-3. (Although the A&E Contract was actually signed in January 2005, not November 2004, the mistake is one of memory, as neither Plaintiffs nor their regular counsel had the A&E Contract in front of them when they advised that it was signed in November. In any event, the date of the A&E Contract is immaterial for purposes of this discussion.)

[5] Sur-Response, p. 2, lines 7-8.

**III. It is Defendants, Not Plaintiffs, Who Are Trying to Change Their Argument Midway Through this Motion Cycle.**

Implied throughout Defendants' Sur-Response is the spurious claim that Plaintiffs have suddenly changed their position by asserting that one of Massoli's companies, and not Massoli herself, signed the A&E Contract. As explained in their Response to Motion For Leave, as well as in the preceding subsection, Plaintiffs' position has *always* been that one of Massoli's companies signed the A&E Contract. Defendants, though, have subtly changed *their* position in the face of the irrefutable evidence presented in the A&E Contract itself.

In nearly all of their substantive filings following the close of the pleadings (except the Sur-Response), Defendants have asserted that Massoli, individually, entered into the A&E Contract. For instance, in their original Rule 12(c) Motion, Defendants claim that: "After executing the Agreement [with Regan Media], *Jameson entered into a contract with A&E . . . .*"[6]

Defendants parrot themselves in their Response in Opposition to Plaintiff/Counterdefendants' Rule 56(f) Motion ("Response to Rule 56(f) Motion") when they state that: "After executing the Agreement, *Jameson entered into a contract with A&E. . . .*"[7]

In other words, up until the filing of their Sur-Response, Defendants have consistently taken the position that Massoli breached the Agreement by individually entering into a contract with A&E. Now they have changed their tune, and are taking the position that they are entitled to judgment on the pleadings "regardless of what entity is on the official A&E Contract."[8]

/ / /

/ / /

---

[6] Memorandum in Support of Defendants/Counterclaimants' Rule 12(C) [sic] Motion for Judgment on the Pleadings, p. 5, line 1 (emphasis added).

[7] Response in Opposition to Plaintiff/Counterdefendants' Rule 56(F) [sic] Motion, p. 4, line 15½.

[8] Sur-Response, p. 4, line 5½.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE 602-307-9900
FACSIMILE 602-307-5853

1  Plaintiffs have not changed their position one iota from what was asserted in the
2  original Complaint, they have merely produced one of the documents referred to in the
3  Complaint. Defendants, on the other hand, have significantly changed the argument they
4  have been asserting ever since the close of the pleadings. If anyone is guilty of playing fast
5  and loose, it is Judith Regan and Regan Media, not Jenna Massoli and her husband.

**IV. Plaintiffs Have Never "Admitted" that Massoli, Individually, Contracted with A&E.**

    *A. The "Admissions" Upon Which Defendants Rely Were Manufactured by Defendants Themselves, and then Seized Upon as the Basis for Their Rule 12(c) Motion.*

In spite of plain evidence to the contrary, in the form of the A&E Contract, Defendants nevertheless insist on claiming that Massoli, individually, entered into a contract with A&E.[9] In support of that claim, Defendants cite six different quotations from Plaintiffs' various filings.[10] A closer look at those quotations, however, reveals that fully one half of them actually support *Plaintiffs'* position that one of Massoli's companies, and not Massoli herself, entered into the A&E Contract.[11]

The reasoning behind the other quotations has already been explained in Plaintiffs' Response to Motion for Leave. Since, as described above, the original Complaint twice asserted that Massoli's company, and not Massoli individually, had executed the A&E Contract, Plaintiffs understandably thought that Defendants' reference to Massoli in their Counterclaim was merely an example of the common practice of referring to an entity's head when discussing the entity itself.

In Plaintiffs' Response to Motion for Leave they gave the examples of Microsoft and Ford. A description of the former might say that "Bill Gates will soon be rolling out a new version of Windows" (in reality, *Microsoft*, not Bill Gates personally, will be rolling out the

---

[9] Sur-Response, Section 1, *generally.*

[10] *Id.*, p. 4.

[11] *Id.*, fourth, fifth, and sixth quotations.

new version). A description of the latter might say that "Bill Ford hopes his new line of vehicles will capture the interest of American drivers" (Ford Motor Company, not Bill Ford personally, has a new line of vehicles). Neither of those descriptions mean, as Defendants claim, that Bill Gates and Microsoft are "one and the same," or that Bill Ford and Ford Motor Company are "one and the same."[12] Similarly, Jenna Massoli and Dolce Amore are not "one and the same" either, nor does Massoli consider herself and Dolce Amore to be such. Defendants know that full well, because when they executed the deal regarding Massoli's book, *How to Make Love Like a Porn Star*, that agreement was executed by *another* of Massoli's corporate entities, Jennasis Entertainment.[13]

Thus, when Plaintiffs answered in the affirmative in response to the allegation in Defendants' Amended Counterclaim (the "Counterclaim") that Massoli had entered into contract with A&E,[14] they were merely answering what they thought was a shorthand way of saying what had already been twice asserted in Complaint, that Massoli's *company* had entered into a Contract with A&E. Those responses were certainly not "admissions" of anything. Plaintiffs never imagined that Defendants were deliberately attempting to misinterpret what was already part of the Court record (that Massoli's company had executed the A&E Contract), put words into Plaintiffs' mouths, and then use those supposed "admissions" to try to receive judgment on the pleadings.

///
///
///
///

---

[12] Sur-Response, p. 5, lines 17-18.

[13] Exhibit B to Reply.

[14] Reply of Plaintiff/Counterdefendant Jenna Massoli p/k/a Jenna Jameson to Amended Counterclaim ("Massoli Reply"), p. 17; Reply of Counterdefendant Jay Grdina to Amended Counterclaim ("Grdina Reply"), p. 17.

**B.** *Plaintiffs' Supposed Admissions Can Easily be Cured by Simply Amending Their Pleadings.*

Defendants assert that their "Rule 12(c) Motion for Judgment on the Pleadings is not based on the A&E Contract, but on Jameson's pleadings . . . ."[15]

That position is nothing short of ridiculous. Defendants are asking this Court to grant them judgment on the pleadings *regardless of the evidence,* and in spite of the fact that Plaintiffs have now twice explained their apparently erroneous interpretation of what was meant by certain language in Defendants' Counterclaim (once in this filing and once in their Response to Motion for Leave).

As Plaintiffs pointed out in their Response to Motion for Leave, the Supreme Court has already exasperatedly condemned such game-playing to avoid trials on the merits, holding that:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive as the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision of the merits."[16]

This tribunal should follow the directive of our Supreme Court. The Court is now well aware of what the A&E Contract says, and is well aware of Plaintiffs' intent when they replied to Defendants' Counterclaim. Even assuming, *arguendo*, that Plaintiffs did inadvertently "admit" that Massoli, individually, executed the A&E Contract, such an "admission" is obviously contrary to the plain evidence of the A&E Contract. Accordingly, the proper remedy is not judgment in favor of Defendants, but rather simply allowing

---

[15] Sur-Response, p. 3, lines 14½-15½.

[16] *Foman v. Davis,* 371 U.S. 178, 181-82 (1962), *citing Conley v. Gibson,* 355 U.S. 41, 48 (1957); *United States v. Hougham,* 364 U.S. 310, 317 (1960) (same) *citing Conley*. *See also, DeWitt v. Pail,* 366 F.2d 682, 685 (9th Cir. 1966) ("The spirit of the Federal Rules of Civil Procedure requires us to construe the pleadings most strongly in favor of the pleader"); *Zorwitz v. Okin,*, 121 F.Supp. 56, 57 (E.D.N.Y. 1954) ("It is elementary that in motions for judgment on the pleadings the pleading under attack must be read in the light most favorable to the party asserting it").

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE 602-307-9900
FACSIMILE 602-307-5853

Plaintiffs an opportunity to amend their pleadings to conform to the evidence, or simply to amend their pleadings generally.[17] The case can then move on a trial on the merits.

**V. Defendants Misapprehend the Meaning of the Artist's Letter of Inducement.**

In yet another example of Defendants' changing their position when faced with irrefutable evidence, as well as their desperation to make *some* kind of argument that their Rule 12(c) Motion somehow survives, they claim in their Sur-Reply that Massoli's execution of an "Artist's Letter of Inducement" ("Letter of Inducement") is equivalent to Massoli actually executing the A&E Contract.[18]

The A&E Contract and the Letter of Inducement are not the same. If they were, both documents would not be necessary. More important than that obvious distinction, however, is the fact that the Letter of Inducement reiterates the point that Plaintiffs have been making since the initial Complaint: that one of Massoli's corporate entities, not Massoli herself, executed the A&E Contract. Additionally, and although Defendants conveniently omitted it from the their block quotation of the Letter of Inducement, that document also makes clear that:

> The undersigned [Massoli] further waives any claim against AETN [A&E] for wages, salary or other compensation of any kind pursuant to said Agreement [the A&E Contract] or in connection with the Pilot and/or Series and the exercise by AETN of its rights therein or derived therefrom (provided, however, that such waiver shall not relieve AETN of any of its obligations to Company [Dolce Amore] under said Agreement), and the undersigned agrees to look solely to Company for any and all compensation to which the undersigned is or may become entitled to receive in connection with the Agreement, the Pilot and/or the Series.[19]

That language unambiguously states that there is no agreement between Massoli and A&E, that the A&E Contract is between Dolce Amore and A&E, and that Massoli is simply an employee of Dolce Amore. A&E is not agreeing to compensate Massoli, and Massoli has

---

[17] *See,* Rules 15(a) and (b), F.R.C.P.

[18] Sur-Response, Section 2.

[19] Letter of Inducement (last page of Exhibit A to Reply).

no right of recovery against A&E should she not be compensated. It is ludicrous for Defendants to claim that such a document is somehow a contract between Massoli and A&E, when Massoli has no rights whatsoever against A&E as a result of the her execution of that document. Further, the Letter of Inducement is clear that the only party with any rights against A&E is Dolce Amore – the actual signatory to the A&E Contract.

Unquestionably, Massoli's execution of the Letter of Inducement is not equivalent to Dolce Amore's execution of the A&E Contract, and therefore cannot be glibly substituted by Defendants as the "contract" which supposedly supports their Rule 12(c) Motion.

**VI. The Term "Any Similar Projects" Has Already Been Addressed.**

As Plaintiffs' explained in their Response to Motion for Leave, the discussion of "any similar projects" in their Reply was not a new argument, but simply another example in support of a previous argument, the Agreement's ambiguous terms. As Plaintiffs also stated in their Response to Motion for Leave:

> [I]f this Court determines that Plaintiffs' discussion [in their Reply] of "any similar projects" is a new argument, and to avoid burdening this Court with even more filings, Plaintiffs are willing to have the eleven lines in their Reply which constitute that so-called argument be stricken, as there are numerous other examples of the Agreement's ambiguity.

Plaintiffs stand by their original discussion, as well as by their offer to have that so-called "new argument" stricken in order to conserve judicial resources.

**VII. Defendants' Rule 12(c) Motion has Not Been Fully Briefed, and both from the Perspective of Fairness, As Well as from the Perspective of Adherence to the Local Rules, Should Not be Ruled Upon at This Time.**

In their Sur-Response, Defendants urge this Court to immediately rule upon and grant their Rule 12(c) Motion.[20] As an initial matter, that simply would not be fair to Plaintiffs. While Plaintiffs have certainly touched upon some of the Rule 12(c) Motion's deficiencies in the briefings of their own Rule 56(f) Motion, those discussions were only entered into after Defendants kept attempting to shift the focus away from the motion at hand and back onto

---

[20] Sur-Response, Section 4.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE 602-307-9900
FACSIMILE 602-307-5853

their own Rule 12(c) Motion.[21] Moreover, not all of Plaintiffs' arguments against granting Defendants' Rule 12(c) Motion have even been brought to bear at this juncture, and Plaintiffs should have an opportunity to present *all* of their arguments to this Court, not just the ones that were touched upon when briefing another motion.

Further, LRCiv. 7.2 of the Rules of Practice of the United States District Court for the District of Arizona contemplates the filing of a response and a reply as part of the full briefing of a motion. While Plaintiffs are firm in their desire to have the opportunity to file a response once this Court has resolved the Rule 56(f) Motion, if Defendants wish to speed the resolution of their Rule 12(c) Motion by waiving their right to file a reply, Plaintiffs will not oppose such a decision.

**VIII. Conclusion.**

WHEREFORE, based upon all of the foregoing, Plaintiffs respectfully request that their Rule 56(f) Motion be granted, that they be given a time certain, but at least 45 days, within which to complete the discovery necessary to respond to Defendants' Rule 12(c) Motion, and that Plaintiffs be given a deadline no earlier than 30 days after the close of the above-described discovery within which to file a response to the Rule 12(c) Motion.[22]

///
///
///
///
///
///
///
///

---

[21] *See generally*, Response to Rule 56(f) Motion.

[22] Plaintiffs are aware that these time frames are somewhat different from those originally requested, but the lengthy briefing schedule of their Rule 56(f) Motion has made the originally-requested dates untenable.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE 602-307-9900
FACSIMILE 602-307-5853

(Page 10)

Plaintiffs additionally reiterate their request that if the Rule 56(f) Motion is denied, that they be given ten court days from the date of the Court's order of denial within which to file a response to the Rule 12(c) Motion.

RESPECTFULLY SUBMITTED this 6th day of September, 2005.

RENAUD COOK DRURY MESAROS, PA

By: /s/ Roger W. Hall
    James L. Blair
    Roger W. Hall
    Phelps Dodge Tower
    One North Central, Suite 900
    Phoenix, AZ 85004-4417
    *Attorneys for Plaintiff/Counterdefendants*

The foregoing was filed electronically this
6th day of September, 2005.

COPY of the foregoing hand-delivered
to the Honorable Earl H. Carroll on the 7th day
of September, 2005.

COPY of the foregoing mailed this 6th
day of September, 2005, to:

David J. Bodney, Esq.
Dennis K. Blackhurst, Esq.
STEPTOE & JOHNSON, LLP
Collier Center
201 East Washington Street, Ste 1600
Phoenix, AZ 85004-2382
*Attorneys for Defendants/Counterclaimants*

Jeffrey F. Reina, Esq. (Pro Hac Vice)
LIPSITZ, GREEN, FAHRINGER
ROLL, SALISBURY & CAMBRIA, LLP
42 Delaware Avenue, Ste 300
Buffalo, NY 14202-3857
*Co-counsel for Plaintiff/Counterdefendants*

   /s/ Deborah Robertson

@PFDesktop\::ODMA/MHODMA/IMANAGE;RCD_PHX;309358;1

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE 602-307-9900
FACSIMILE 602-307-5853