No. CV 05-0854 PHX EHC

Jenna Massoli v. Regan Media

Exhibit List to Motion to Amend Counterclaim:

Exhibit A: Redlined version of Second Amended Counterclaim

# Exhibit A

Exhibit A

STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

David J. Bodney (006065)
Dennis K. Blackhurst (021678)
Attorneys for Defendants/Counterclaimants
Regan Media, Inc. and Judith Regan

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JENNA MASSOLI p/k/a JENNA JAMESON,<br><br>                  Plaintiff,<br><br>vs.<br><br>"REGAN MEDIA," and JUDITH REGAN, an individual,<br><br>                  Defendants. | No. CV 05-0854 PHX EHC<br><br>~~SECOND AMENDED ANSWER AND~~ **SECOND AMENDED** COUNTERCLAIM<br><br>(Assigned to the Honorable Earl H. Carroll) |

~~Counterclaim~~Defendants/Counterclaimants Regan Media, Inc. and Judith Regan (collectively, "Counterclaimants"), for their **Second Amended** Counterclaim against Plaintiff/ Counterdefendant Jenna Massoli p/k/a Jenna Jameson ~~and her husband, Third-Party~~, Counterdefendant Jay Grdina **and Counterdefendant Dolce Amore, Inc.**, allege as follows:

1. Defendant/Counterclaimant Regan Media, Inc. ("Regan Media") is a New York corporation with its principal place of business in New York, New York.

2. Defendant/Counterclaimant Judith Regan ("Regan") is an individual residing in the state of New York.

3. Plaintiff/Counterdefendant Jenna Massoli p/k/a Jenna Jameson ("Massoli") is an individual residing in Maricopa County, Arizona. **On information and belief, Massoli's acts and omissions were performed for the benefit of the marital community between Massoli and Jay Grdina.**

4. ~~Third-Party~~ Counterdefendant Jay Grdina ("Grdina") is an individual residing in Maricopa County, Arizona and is the husband of Massoli. ~~Pursuant to Fed. R. Civ. P. 13(h) and 20, Grdina has been named because, upon information and belief,~~ ~~Massoli~~**Grdina**'s acts and omissions were performed for the benefit of the marital community between ~~Massoli and~~ Grdina **and Massoli. On information and belief, Grdina is, and at all material times was, president of Dolce Amore, Inc.**

**5. Counterdefendant Dolce Amore, Inc. ("Dolce Amore") is a Colorado corporation that caused events to occur in Arizona related to this dispute. Specifically, Dolce Amore entered into a contract that is the subject of this litigation relating to the production and filming of a reality-based television series in Arizona. In addition, Dolce Amore has a permanent presence in Arizona because its president resides in Maricopa County and it acts on behalf of Massoli, another Arizona resident**.

**6.** ~~5.~~ This Court has **subject matter** jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship as to all parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The action was properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

**7.** ~~6.~~ Venue is proper pursuant to 28 U.S.C.A. § 1391.

## FACTS

### The April 1, 2004 Agreement

2

**8.** ~~7. Counterclaimants~~__Regan and Regan Media__ have been involved in the promotion of business opportunities arising out of Massoli's memoir, *How to Make Love Like a Porn Star*, published by Regan Media, an imprint of HarperCollins.

**9.** ~~8.~~ Massoli and Regan Media entered into a contract dated as of April 1, 2004 relating to "the possible development, production, distribution and exploitation" of potential projects including television programs featuring Massoli (the "Agreement"). All provisions of the Agreement are incorporated herein by reference, and a true and correct copy is attached as Exhibit 1.

**10.** ~~9.~~ The Agreement covers "any Projects," a term defined to include two possible categories of television programs featuring Massoli, or "any similar projects." The first potential Project relates to a one-hour special based on Massoli's memoir, which would include interviews with Massoli and her friends and family, as well as video clips and photographs from Massoli's personal and professional life. The second Project is described as a potential "reality based television program about the various aspects of Jenna Jameson's life."

**11.** ~~10.~~ The Agreement ~~explicitly~~ states that the consideration underlying the Agreement includes "each party's efforts to obtain financing for and/or set up the projects for development, production, distribution and exploitation."

**12.** ~~11.~~ The Agreement provides Regan Media with the exclusive right to negotiate with financiers including television networks relating to either of the two Projects or "any similar projects." Specifically, Paragraph 1 of the Agreement provides:

> ReganMedia shall have the exclusive right to pitch, submit and represent each Project to television networks, motion picture studios or other potential financiers (collectively, "Financiers") for the purpose of obtaining financing and/or other commitments from such Financiers for the development, production, distribution and exploitation of each such Project and/or soliciting interest from such

Financiers in optioning, purchasing or otherwise acquiring rights in and to each such Project.

**13.** ~~12.~~ The Agreement further provides for certain rights and production credits for Regan and Regan Media in the event such a Project is pursued, regardless of which party locates the financier or television network, including credits for Regan as executive producer and the project as a "ReganMedia production." Specifically, for example, Paragraph 2 of the Agreement provides:

> If a financier desires to finance the development, production, distribution and/or other exploitation of any Projects and/or license, option, purchase or otherwise acquire any rights in any Projects, then each such project shall be a ReganMedia production and Judith Regan ("Regan") shall be an executive producer. . . . Jameson and Regan shall negotiate their executive producer deals with any Financiers together and in good faith, including, without limitation, with respect to the fees and other compensation related to their executive producer services in connection with any Project. . .

**14.** ~~13.~~ Paragraph 4 requires mutual approval of both parties on "all business and creative decisions with respect to each Project." Paragraph 6 of the Agreement further provides:

> Neither party hereto shall proceed with the further development, production, distribution and/or other exploitation of any Project, or option, license, sell or otherwise dispose of or encumber any rights in and to any Project, unless and until both parties have agreed to all the terms and conditions of their agreements with the applicable Financier of such project.

**15.** ~~14.~~ Paragraph 8 of the Agreement includes a valid merger clause:

> . . . this Agreement supersedes any prior oral or written agreement(s) and/or understanding(s) between the parties with respect to the subject matter of this Agreement.

**16.** **Paragraph 8 also includes a valid choice of law clause:**

4

... **This Agreement shall be construed, interpreted and governed by the laws of the State of New York without regard to any conflicts of law principles.**

**17.** **There is no reference to any specific television network in the Agreement.**

**18.** ~~15.~~ As contemplated in the Agreement, Regan and Regan Media conducted discussions throughout 2004 with a number of television networks, including A&E, HBO, VH1, Fox and F/X, relating to potential television projects featuring Massoli.

**19.** ~~16.~~ In March and April 2004, Regan Media proposed a potential television reality series featuring Massoli to the A&E Television ~~Network~~**Networks** ("A&E") and received an offer from A&E ~~to pursue~~**regarding** such a project. Regan and Regan Media took the A&E proposal to Massoli, and Massoli rejected it, stating that A&E lacked the target audience for the Massoli reality series. Although Regan and Regan Media continued to talk to A&E about the Massoli project, they also discussed ~~the~~**a potential** project with other networks.

### The A&E Contract

**20.** **After Massoli executed the Agreement with Regan Media, Massoli and Grdina negotiated with A&E relating to Massoli's participation in a reality television series based on Massoli's life. These negotiations took place despite Massoli's knowledge that Regan and Regan Media had been involved in previous discussions with A&E and despite Massoli's statement to Regan that A&E lacked the proper target audience for a reality series featuring Massoli.**

**21.** **Although Massoli and Grdina understood the terms of Massoli's Agreement with Regan Media, they failed to include or consult Regan and Regan Media in their discussions and negotiations with A&E.**

5

**22.** In or about January 2005, Massoli agreed to participate in a reality television series based on Massoli's life to be financed and produced by A&E (the "A&E Project").

**23.** In or about January 2005, Massoli and Grdina caused Dolce Amore, a corporation owned and controlled by Massoli and Grdina, to execute a contract with A&E (the "A&E Contract") relating to Massoli's participation in the reality-based television series. Grdina signed the A&E Contract as the president of Dolce Amore. Massoli signed an "Artist's Letter of Inducement" as an integral part of the A&E Contract. A copy of the A&E Contract is attached as Exhibit 2.

**24.** Grdina and Massoli caused Dolce Amore to execute the A&E Contract in an attempt to avoid Massoli's obligations under the Agreement with Regan Media.

**25.** ~~17. On information and belief, but without Regan Media's knowledge, Massoli later entered into a contract with A&E (the "A&E Contract") relating to Massoli's participation in a reality-based television series about Massoli's life. The A&E project~~ The **A&E Project** is a reality-based series that is encompassed within the **definition of the** term "Project" as used in the April 1, 2004 Agreement.

**26. The A&E Contract recites that Dolce Amore "has entered into an Exclusive Acting Services Agreement with Jenna Jameson [Massoli] to provide on-camera/on-air acting services in connection with the production of a reality-based television series. . ."**

**27. The parties to the A&E Contract agreed that Massoli's participation in the project was of the essence:**

> **The parties acknowledge that the participation of Artist [Massoli] as the principal on-camera subject of the Pilot and, if applicable, the Series and in promotion of the Pilot and, if applicable, the Series . . . is of the essence of this Agreement. Company warrants and represents that the terms of its contract with Artist expressly**

6

provides that Artist shall fully perform the services required by AETN as provided herein to the best of her professional ability...

28. The A&E Contract further provides:

> Company has the contractual right and authority to enter into this Agreement and to bind Artist to the terms, provisions, covenants and restrictions contained herein, including without limitation the exclusivity and copyright provisions hereof.

29. The A&E Contract provides for on-screen "Executive Producer" credits for Grdina, but not for Regan. Neither Regan nor Regan Media is mentioned anywhere in the A&E Contract.

30. Although Dolce Amore executed the A&E Contract, Massoli personally signed an "Artist's Letter of Inducement," which is attached as an exhibit to the A&E Contract. The "Artist's Letter of Inducement" provides:

> In order to induce the A&E TELEVISION NETWORKS ("AETN") to enter into the foregoing Agreement with DOLCE AMORE, INC. (the "Company"), and for other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned [Massoli] hereby consents and agrees to the execution and delivery of said Agreement by Company and hereby agrees to render all the services therein provided to be rendered by the undersigned, to grant all the rights granted therein, and to be bound by and duly to perform and observe each and all of the terms and conditions of said Agreement regarding performance or compliance on the undersigned's part, and hereby joins in all warranties, representations, obligations, agreements and indemnities made by Company, and further confirms the rights granted to AETN under said Agreement...

31. By signing the "Artist's Letter of Inducement," Massoli directly and personally agreed to participate in the A&E Project.

32. By signing the "Artist's Letter of Inducement," Massoli personally assumed Dolce Amore's contractual obligations under the A&E Contract.

7

**33. On information and belief, Massoli also entered into a contract with Dolce Amore to participate in the A&E Project as an employee of Dolce Amore.**

**34.** In violation of ¶¶ 1 through 6 of the April 1, 2004 Agreement, Massoli failed to consult with Regan or Regan Media in connection with the terms and negotiations of **either** the A&E Contract **or her agreement with Dolce Amore**.

**35.** ~~19. The terms of the A&E Contract have not been disclosed to Regan and Regan Media. Upon information and belief~~ **In violation of ¶¶ 2 and 5 of the Agreement**, the A&E Contract does not provide that the project will "be a ReganMedia production" or provide Regan Media with production company or logo credits ~~in violation of ¶¶ 2 and 5 of the Agreement~~.

**36.** ~~20. Upon information and belief, the~~**The** A&E Contract does not include Regan as an executive producer of the program or provide for any compensation to Regan or provide Regan with a "Created By" credit in violation of ¶¶ 2 and 5 of the Agreement.

**37.** ~~21. Massoli's~~**The** negotiation ~~and execution~~ of the A&E Contract **by Massoli, Grdina and Dolce Amore** without Regan Media's involvement violated Regan Media's exclusive contractual "right to pitch, submit and represent each Project to television networks," as provided in ¶ 1 of the Agreement.

**38.** ~~22.~~ Massoli failed to involve Regan Media in "all creative and business decisions with respect to each Project" and failed to seek or obtain Regan Media's approval in connection with the A&E Contract in violation of ¶¶ 4 and 6 of the Agreement.

## COUNT ONE (Breach of Contract)
**Regan Media v. Massoli**

**39.** ~~23.~~ Defendant/Counterclaimant Regan Media incorporates the allegations of Paragraphs 1 through ~~22~~**38** above as though incorporated herein.

8

**40.** ~~24.~~ The April 1, 2004 Agreement between Regan Media and Massoli is a valid and enforceable contract.

**41.** ~~25.~~ Massoli committed material violations of the Agreement by negotiating ~~and contracting~~ with A&E without involving and consulting Regan **and Regan Media.**

**42. Massoli committed material violations of the Agreement by agreeing to participate in the A&E project without involving and consulting Regan and Regan Media.**

**43. Massoli committed material violations of the Agreement by signing the "Artist's Letter of Inducement" in connection with the A&E Agreement without involving and consulting Regan and Regan Media.**

**44. Massoli committed material violations of the Agreement by using Dolce Amore to execute the A&E Contract without involving or consulting Regan and Regan Media.**

**45. Massoli committed material violations of the Agreement by entering into an agreement with Dolce Amore to participate in the A&E reality series without involving or consulting Regan and Regan** Media.

**46.** ~~26.~~ Regan Media fulfilled all of its material obligations under the Agreement.

**47.** ~~27.~~ Massoli's breach of the Agreement has caused and will continue to cause Regan Media damages.

WHEREFORE, Defendant/Counterclaimant Regan Media, Inc. respectfully demands judgment against Plaintiff/Counterdefendant Jenna Massoli ~~and Third-Party Counterdefendant Jay Grdina~~ as follows:

    a.    an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; **and**

9

b. ~~an award of Defendants/Counterclaimants' attorneys' fees and costs pursuant to A.R.S. § 12-341.01; and~~ ~~c.~~ such other and further relief as this Court deems proper.

### COUNT TWO (Breach of Contract/Third-Party Beneficiary)
### Regan v. Massoli

**48.** ~~28.~~ Defendant/Counterclaimant Judith Regan incorporates the allegations of Paragraphs 1 through ~~27~~ **47** above as though incorporated herein.

**49.** ~~29.~~ The April 1, 2004 Agreement between Regan Media and Massoli is a valid and enforceable contract.

**50.** ~~30.~~ Massoli committed material violations of the Agreement by negotiating ~~and contracting~~ with A&E without involving and consulting Regan Media.

**51.** **Massoli committed material violations of the Agreement by agreeing to participate in the A&E project without involving and consulting Regan and Regan Media.**

**52.** **Massoli committed material violations of the Agreement by signing the "Artist's Letter of Inducement" in connection with the A&E Agreement without involving and consulting Regan and Regan Media.**

**53.** **Massoli committed material violations of the Agreement by using Dolce Amore to execute the A&E Contract without involving or consulting Regan and Regan Media.**

**54.** **Massoli committed material violations of the Agreement by entering into an agreement with Dolce Amore to participate in the A&E reality series without involving or consulting Regan and Regan Media.**

**55.** ~~31.~~ Regan is an intended third-party beneficiary of the Agreement and has standing to enforce the Agreement against Massoli ~~and Grdina~~.

56. ~~32.~~ Massoli's breach of the Agreement has caused and continues to cause Regan damages.

WHEREFORE, Defendant/Counterclaimant Judith Regan respectfully demands judgment against Plaintiff/Counterdefendant Jenna Massoli ~~and Third-Party Counterdefendant Jay Grdina~~ as follows:

    a. an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; **and**

    b. ~~an award of~~ **such other and further relief as this Court deems proper.**

### COUNT THREE (Breach of Covenant of Good Faith and Fair Dealing)
### Regan and Regan Media v. Massoli

57. Defendants/Counterclaimants ~~' attorneys' fees and costs pursuant to A.R.S. § 12-341.01; and~~ **Regan Media, Inc. and Judith Regan** incorporate the allegations of Paragraphs 1 through 56 above as though incorporated herein.

58. An implied covenant of good faith and fair dealing is read into the Agreement between Regan Media and Massoli. Regan has standing as a third-party beneficiary to enforce the Agreement as well as any covenants implied in the Agreement.

59. Massoli took steps to circumvent the Agreement and deny Regan and Regan Media the benefits to which they were entitled under the Agreement.

60. Massoli used Dolce Amore to execute the A&E Contract in an effort to avoid her obligations to Regan and Regan Media under the Agreement.

61. By so doing, Massoli breached the implied covenant of good faith and fair dealing she owed Regan and Regan Media under the Agreement.

11

**62. Massoli's breach of the implied covenant of good faith and fair dealing has caused and continues to cause Regan and Regan Media damages.**

**WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Plaintiff/Counterdefendant Jenna Massoli as follows:**

**a. an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; and**

~~a~~**b.** such other and further relief as this Court deems proper.

### COUNT ~~THREE~~**FOUR** (Declaratory Judgment) Regan and Regan Media v. Massoli)

**63.** ~~33.~~ Defendants/Counterclaimants Regan Media, Inc. and Judith Regan incorporate the allegations of Paragraphs 1 through ~~32~~**62** above as though incorporated herein.

**64.** ~~34.~~ There is an actual dispute regarding whether the A&E ~~project~~**Project** is subject to the April 2004 Agreement between Massoli and Regan Media, entitling Counterclaimants to declaratory relief under A.R.S. § 12-1832. Such relief will resolve the controversy between Counterclaimants and Massoli.

WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Plaintiff/Counterdefendant Jenna Massoli as follows:

a. a declaration that the A&E reality television project is encompassed within the scope of the April 1, 2004 Agreement between Regan Media and Massoli;

b. a declaration that Massoli's ~~execution of~~**agreement to participate in** the A&E ~~Contract~~**Project** constitutes a breach of the April 1, 2004 Agreement;

12

c.  a declaration that Regan Media and Regan are entitled to all rights, benefits and remedies in connection with the A&E project as provided in the April 1, 2004 Agreement; **and**

d.  ~~an award of Counterclaimants' attorneys' fees and costs pursuant to A.R.S. § 12-341.01; and~~**d. such other and further relief as this Court deems proper.**

### COUNT FIVE (Intentional Interference with Contract)
### Regan and Regan Media v. Dolce Amore

**65.  Defendants/Counterclaimants Regan Media, Inc. and Judith Regan incorporate the allegations of Paragraphs 1 through 64 above as though incorporated herein.**

**66.  Upon information and belief, Dolce Amore knew or should have known of the April 1, 2004 Agreement between Massoli and Regan Media. Dolce Amore had access to the Agreement at all relevant times.**

**67.  Upon information and belief, Dolce Amore understood Massoli's obligations to Regan and Regan Media under the Agreement.**

**68.  In or about January 2005, Dolce Amore entered into a contract with A&E relating to the production of a reality television series featuring Massoli.**

**69.  On information and belief, Dolce Amore entered into the A&E Contract for the purpose of avoiding Massoli's obligations under the Agreement and excluding Regan and Regan Media from participation in the A&E Project. By so doing, Dolce Amore facilitated Massoli's breach of the Agreement with Regan Media.**

**70.  The execution of the A&E Contract resulted in the breach of Massoli's Agreement with Regan Media.**

**71.  Dolce Amore intentionally and tortiously interfered with the Agreement between Regan Media and Massoli by encouraging and facilitating Massoli's**

13

participation in a reality series without involving or consulting Regan Media and/or Regan.

72. Upon information and belief, Dolce Amore received payment from A&E under the A&E Contract relating to the filming of a pilot for the reality series and/or for Massoli's participation in the A&E reality series.

73. Regan and Regan Media have suffered damages as a direct result of Dolce Amore's tortious and intentional interference with the Agreement between Regan Media and Massoli.

WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Counterdefendant Dolce Amore, Inc. as follows:

    ~~e~~a. an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; and

    b. such other and further relief as this Court deems proper.

### COUNT SIX (Intentional Interference with Contract)
### Regan and Regan Media v. Grdina

74. Defendants/Counterclaimants Regan Media, Inc. and Judith Regan incorporate the allegations of Paragraphs 1 through 73 above as though incorporated herein.

75. Upon information and belief, Grdina knew or should have known of the April 1, 2004 Agreement between Massoli and Regan Media in 2004. Grdina had access to the Agreement at all relevant times.

76. Upon information and belief, Grdina understood Massoli's obligations to Regan and Regan Media under the Agreement.

14

77. In or about January 2005, Grdina caused Dolce Amore to enter into a contract with A&E relating to the production of a reality television series featuring Massoli.

78. On information and belief, Grdina caused Dolce Amore to enter into the A&E Contract for the purpose of avoiding Massoli's obligations under the Agreement and excluding Regan and Regan Media from participation in the A&E Project. By so doing, Grdina facilitated Massoli's breach of the Agreement with Regan Media.

79. The execution of the A&E Contract resulted in the breach of Massoli's Agreement with Regan Media.

80. Grdina intentionally and tortiously interfered with the Agreement between Regan Media and Massoli by encouraging and facilitating Massoli's participation in a reality series without involving or consulting Regan Media and/or Regan.

81. On information and belief, Grdina received compensation from Dolce Amore and/or A&E for services as "Executive Producer" under the A&E Contract.

82. Regan and Regan Media have suffered damages as a direct result of Grdina's tortious and intentional interference with the Agreement between Regan Media and Massoli.

WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Counterdefendant Jay Grdina as follows:

 a. an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; and

 b. such other and further relief as this Court deems proper.

## COUNT SEVEN (Unjust Enrichment)
### Regan and Regan Media v. Dolce Amore

83. Defendants/Counterclaimants Regan Media, Inc. and Judith Regan incorporate the allegations of Paragraphs 1 through 82 above as though incorporated herein.

84. Under the Agreement, Massoli had a contractual obligation to consult and involve Regan and Regan Media in connection with the negotiation or agreement to participate in any reality television series based on Massoli's life.

85. Massoli breached this obligation by agreeing to participate in the A&E Project without involving or consulting Regan and Regan Media.

86. Massoli and Grdina improperly and fraudulently attempted to use Dolce Amore to avoid Massoli's obligations under the Agreement with Regan Media.

87. Upon information and belief, Dolce Amore received payment from A&E in connection with the A&E Project. This payment was channeled through Dolce Amore in an effort to exclude Regan and Regan Media from participation in the A&E Project.

88. Regan and Regan Media have suffered a loss in the form of lost compensation that they should have received under the Agreement.

89. Dolce Amore has received a benefit to which it was not entitled.

90. Under the circumstances, it would be unjust to allow Dolce Amore to retain compensation received from A&E under the A&E Contract.

WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Counterdefendant Dolce Amore, Inc. as follows:

16

a.  an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; and

b.  such other and further relief as this Court deems proper.

### COUNT EIGHT (Alter Ego Liability)
### Regan and Regan Media v. Dolce Amore, Massoli and Grdina

91. Defendants/Counterclaimants Regan Media, Inc. and Judith Regan incorporate the allegations of Paragraphs 1 through 90 above as though incorporated herein.

92. Massoli and Grdina exercise absolute control over Dolce Amore, such that Dolce Amore exists solely as an instrumentality, agent and alter ego of Grdina and Massoli.

93. Grdina and Massoli use Dolce Amore as a financial alter ego to further their own economic interests.

94. Massoli and Grdina fraudulently used Dolce Amore in connection with the A&E Contract in an effort to deprive Regan and Regan Media of the benefit of the Agreement with Massoli.

95. Upon information and belief, Dolce Amore received payment from A&E in connection with the A&E Project. This payment was channeled through Dolce Amore in an effort to exclude Regan and Regan Media from participation in the A&E Project.

96. To recognize the separate corporate existence of Dolce Amore under the circumstances would be to sanction a fraud and promote injustice.

WHEREFORE, Defendants/Counterclaimants Regan Media, Inc. and Judith Regan respectfully demand judgment against Plaintiff/Counterdefendant Jenna Massoli and Counterdefendants Jay Grdina and Dolce Amore, Inc. as follows:

17

<u>a. entering an order piercing the corporate veil of Dolce Amore an treating its assets as belonging to Massoli and Grdina;</u>

<u>b. an award of damages in an amount to be determined at trial, plus interest thereon at the statutory rate from the earliest date allowed by law until paid; and</u>

<u>c. such other and further relief as this Court deems proper.</u>

Respectfully submitted this ~~—~~ <u>9th</u> day of ~~May~~<u>September</u>, 2005.

                STEPTOE & JOHNSON LLP

                By <u>/s/ **David J. Bodney**</u>
                   David J. Bodney
                   Dennis K. Blackhurst
                   Collier Center
                   201 East Washington Street
                   Suite 1600
                   Phoenix, Arizona 85004-2382

                Attorneys for Defendants/
                Counterclaimants Regan Media, Inc. and
                Judith Regan

~~470698v1~~
<u>478743v5</u>

18

Case 2:05-cv-00854-EHC   Document 44-2   Filed 09/09/2005   Page 20 of 20