# INDEX OF EXHIBITS

*Jenna Massoli p/k/a Jenna Jameson v. Regan Media and Judith Regan*

**CV 05-00854 PHX EHC**

Exhibit A:   Defendant/Counterclaimant Regan Media's First Request for Production of Documents from Counterdefendants.

Exhibit B:   Correspondence from David J. Bodney to Roger W. Hall dated December 9, 2005.

Exhibit C:   E-mails between Roger W. Hall and David J. Bodney dated December 14, 2005.

# EXHIBIT A

STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile: (602) 257-5299

David J. Bodney (006065)
Dennis K. Blackhurst (021678)
Attorneys for Defendants/Counterclaimants
Regan Media, Inc. and Judith Regan

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JENNA MASSOLI p/k/a JENNA JAMESON,<br><br>Plaintiff,<br><br>vs.<br><br>"REGAN MEDIA," and JUDITH REGAN, an individual,<br><br>Defendants. | No. CV 05-0854 PHX EHC<br><br>**DEFENDANT/ COUNTERCLAIMANT REGAN MEDIA'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS FROM COUNTERDEFENDANTS** |
| REGAN MEDIA, INC., a New York corporation, and JUDITH REGAN, an individual,<br><br>Defendants/Counterclaimants,<br><br>vs.<br><br>JENNA MASSOLI p/k/a JENNA JAMESON, an individual,<br><br>Plaintiff/Counterdefendant,<br><br>and<br><br>JAY GRDINA, an individual, and DOLCE AMORE, INC., a Colorado corporation,<br><br>Counterdefendants. | (Assigned to the Honorable Earl H. Carroll) |

Pursuant to Fed. R. Civ. P. 34, Defendant/Counterclaimant Regan Media, Inc. requests that Plaintiff/Counterdefendants Jenna Massoli p/k/a Jenna Jameson, Jay Grdina and Dolce Amore, Inc. produce for inspection and copying, within thirty (30) days of the date hereof, and in accordance with the definitions and instructions below, the documents and things described, at the offices of Steptoe & Johnson LLP, 201 East Washington Street, Phoenix, Arizona 85004.

## Definitions

1. The term "communications" means any provision, receipt or exchange of any information, in any manner or form (including any oral, telephonic, written, electronic or other means of communication).

2. The term "including" means including, but not limited to.

3. The term "relating to" includes, without limitation, the concepts of referring to, describing, mentioning, discussing, dealing with, analyzing, recording or constituting, as appropriate.

4. The terms "you," "your" and "yours" mean you, Jenna Massoli p/k/a Jenna Jameson, Jay Grdina and Dolce Amore, Inc., and any other person acting on your behalf.

5. The term "Regan" means Judith Regan and any other person acting on her behalf.

6. The term "Regan Media" means Regan Media, Inc. and any other person acting on its behalf.

7. The term "Jameson" means Jenna Massoli p/k/a Jenna Jameson and any other person acting on her behalf, including, without limitation, Linda Johnson or any other personal assistant of Jameson.

8. The term "Grdina" means Jay Grdina and any other person acting on his behalf.

2

9. The term "Dolce Amore" means Dolce Amore, Inc. and any other person acting on its behalf.

10. The term "A&E" means A&E Television Networks and any other person acting on its behalf.

11. The term the "A&E Contract" refers to the Television Reality Series / Project Production Agreement between A&E and Dolce Amore entered into in or about January 2005 relating to a potential television program featuring Jameson.

12. The term "document" means any and all papers, writings, recordings, and graphic materials of every kind and description, in the possession, custody or control of you and your investigators, agents, employees, and other representatives of you and your attorneys, including, but not limited to, all written, recorded and graphic matter of every type and description, contracts, receipts, purchase orders, canceled checks, drafts, invoices, statements, memoranda, corporate minutes, bulletins, intra- and interoffice communications, statements, drafts, books of account, worksheets, desk diaries, appointment books, expense accounts, recordings, notes of conversations, notes of meetings and conferences, telegraphic communications, telephone messages, telephone logs, stock certificates, pamphlets, schedules, studies, books, computer printouts, reports, photographs, maps, charts, photographic records, tapes, video recordings, and any other device or medium on or through which information of any type is transmitted, recorded or preserved. The term "document" also includes electronic, magnetic or machine readable media, information on such media, and computer-stored information including original computer files wherever stored (including laptops and personal or home PC's), spreadsheets or database files, e-mail messages, floppy disks, tape backups or archived files, restored data or undelete (recovered) files, computerized data, electronically recorded information, voice mail messages and files, backup voice mail files, e-mail messages and files, backup e-mail files, data files, backup and archival tapes, temporary

files, and other electronically recorded information. Electronic mail or e-mail messages are included in the term "document" even if only available on backup or archive tapes or disks. The term "document" also means every copy of a document where such copy is not an identical duplicate of the original.

## Instructions

1. In providing the documents responsive to these requests, you must furnish all documents available to you, regardless of whether these documents are possessed directly by you, or by your attorney, employees, agents, investigators or other representatives.

2. If any responsive document was, but no longer is, available to you or within your possession custody or control, identify the document (stating its date, author, subject, recipient, custodian and specific location); explain the circumstances by which the document ceased to be available to you; and identify (stating the person's name, employer, title, last known business address and telephone number and last known home address and telephone number) all persons known or believed to have the document or copy of the document in their possession, custody or control.

3. If any responsive documents cannot be produced in full, produce to the extent possible, and specify the reasons for your inability to produce the remainder stating whatever information, knowledge or belief you have concerning the substance of the contents of the unproduced documents.

4. The singular form of any word shall include the plural, and the masculine form of any word shall include the feminine. The words "and" and "or" shall be construed both conjunctively and disjunctively. The terms "any" and "all" shall both be construed to mean any and all.

5. Unless otherwise stated, the time frame relevant to the Requests is September 2003 to the present.

6. To the extent that any category of document requested herein is deemed objectionable, you are requested to comply to the extent that such category is not deemed objectionable. If you withhold from production any document on the grounds that it is protected by privilege, please furnish the following information: the date of the document; names and titles of the persons who created the document; addressees and/or recipients of the document, whether intended or unintended; persons who received, reviewed or were shown copies of the document; title of the file in which the document was contained; name of the person who prepared and maintained the file; subject of the document; the nature and basis of the privilege claimed; and the request for production to which the document is responsive.

7. These requests are intended to be continuing, requiring you to produce whatever documents responsive to this request that you may subsequently become aware of or obtain.

### Requests for Production

1. All documents reflecting, identifying or relating to any amounts of money or other compensation received by Jameson, Grdina or Dolce Amore in connection with the A&E Contract.

2. All documents relating to any communications between any of the Counterdefendants, on the one hand, and A&E, on the other, relating to the Agreement, the A&E Contract or any proposed television program featuring Jameson.

3. All documents relating to any communications between any of the Counterdefendants, on the one hand, and any of the Counterclaimants, on the other,

relating to the Agreement, the A&E Contract or any proposed television program featuring Jameson.

4. All drafts, notes or other documents relating to the negotiation of the A&E Contract, or any documents executed in connection with the A&E Contract.

5. All documents relating to communications between any of the Counterdefendants, on the one hand, and VH1, on the other, relating to the one-hour special featuring Jameson broadcast by VH1 on or about August 16, 2004, including, without limitation, any videotape, digital images or other photographic depictions of or relating to that VH1 feature.

6. All documents relating to the relationship between Jameson and Dolce Amore, including, without limitation, the "Exclusive Acting Services Agreement" between Jameson and Dolce Amore as referenced in the A&E Contract.

7. All documents reflecting, identifying or relating to any amounts of money or other compensation received by Jameson from Dolce Amore from its incorporation to the present.

8. All documents relating to the relationship between Grdina and Dolce Amore.

9. All documents reflecting, identifying or relating to any amounts of money or other compensation received by Grdina from Dolce Amore from its incorporation to the present.

6

10. All documents relating to the organizational structure of Dolce Amore, including, without limitation, any documents reflecting the incorporation, ownership, officers and directors of Dolce Amore.

11. Tax returns filed on behalf of Dolce Amore from its incorporation to the present.

12. All documents relating to Dolce Amore's bank accounts from its incorporation to the present, including, without limitation, monthly and annual account statements, summaries of account activity, deposit slips and canceled checks.

13. All books, records and documents relating to the financial condition of Dolce Amore for the fiscal years 2003 to the present, including, without limitation:

   a. financial statements;

   b. journals (or other books of original entry) and ledgers, including cash receipts journals, cash disbursements journals, sales journals, general journals, general ledgers, trial balance sheets and supporting workpapers;

   c. charts of accounts with a description of each account;

   d. general correspondence and administrative files;

   e. a list of all bank accounts, including names of banks, account numbers and addresses;

   f. stock ownership records, including the name and address of the registrar and transfer agent;

g. charts, graphs and other documents showing the organizational relationship between, or ownership of, Dolce Amore and its parent, subsidiary and affiliate companies; and

h. documents relating to transactions between Dolce Amore and its officers, directors and affiliates, including documents showing direct and indirect compensation, remuneration, dividends, bonuses, interest, profits and employment contracts.

14. All minutes of meetings of the board of directors, executive committee or stockholders of Dolce Amore from its incorporation to the present, including, without limitation, all data used or presented and notes taken at those meetings.

15. All annual and interim reports to shareholders of Dolce Amore from its incorporation to the present.

16. All documents relating to web log, journal or other postings on any website owned or controlled by Jameson, Dolce Amore, Jennasis Entertainment, Inc. or any other entity in which Jameson owns any interest, relating to the Agreement, the A&E Contract or the one-hour VH1 special, or containing any reference to a reality television series involving Jameson.

17. Any videotape, digital images or other photographic depiction of or relating to the pilot created or other preliminary filming or footage taken in connection with the A&E Contract.

18. All documents relating to any efforts by Counterdefendants, or any of them acting solely or in concert with one another, to market a potential reality-based television program featuring Jameson or Grdina.

19. All documents relating to any communications between any of the Counterdefendants, on the one hand, and any media outlet, on the other, relating to an actual or potential television program featuring Jameson or Grdina.

20. All documents referring to Regan or Regan Media and relating to a potential reality-based television program featuring Jameson or a potential one-hour special featuring Jameson.

21. All documents relating to, supporting, identified in or referred to in drafting your response to Defendants/Counterclaimants' First Set of Interrogatories.

DATED this 4th day of November, 2005.

STEPTOE & JOHNSON LLP

By_____
David J. Bodney
Dennis K. Blackhurst
Collier Center
201 East Washington Street
Suite 1600
Phoenix, Arizona 85004-2382

Attorneys for Defendants/
Counterclaimants Regan Media, Inc. and
Judith Regan

9

CERTIFICATE OF SERVICE

The undersigned certifies that on November 4th, 2005, a copy of the foregoing DEFENDANT/COUNTERCLAIMANT REGAN MEDIA'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS FROM COUNTERDEFENDANTS was served on the parties by hand delivery to:

> James L. Blair
> Renaud Cook Drury Mesaros, PA
> Phelps Dodge Tower
> One North Central, Suite 900
> Phoenix, AZ 85004-4417

And by mail to:

> Bernard M. Brodsky, Esq.
> Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP
> 42 Delaware Avenue, Suite 300
> Buffalo, NY 14202-3857

*Attorneys for Plaintiff/Counterdefendant and Counterdefendants*

/s/ Lisa H. Morgan

# EXHIBIT B

# STEPTOE & JOHNSON
## ATTORNEYS AT LAW

David J. Bodney
Tel 602.257.5212
Fax 602.452.0910
dbodney@steptoe.com

Collier Center
201 East Washington Street
Suite 1600
Phoenix, AZ 85004-2382
Tel 602.257.5200
Fax 602.257.5299
steptoe.com

December 9, 2005

VIA FACSIMILE
AND U.S. MAIL

Roger William Hall
Renaud Cook Drury Mesaros PA
Phelps Dodge Tower
1 N Central Ave, Ste 900
Phoenix, AZ 85004-4418

Re: Regan Media, Inc. AND Judith Regan / Jenna Massoli p/k/a Jenna Jameson (D. Ariz., No. CV 05-0854 PHX EHC)

Dear Roger:

I write to secure new deposition dates for your clients -- Jenna Jameson, Jay Grdina and Dolce Amore, Inc. -- and address related discovery issues in the above matter. Because the original dates that we proposed for the depositions last month were inconvenient for your clients, you and I have discussed re-scheduling them for late January or early February 2006 and stipulating to extend the expert disclosure deadline.

As we discussed by telephone this morning, I suggest we proceed with the depositions on the following dates: Jenna Jameson, Tuesday, January 31, 2006 at 9:00 a.m.; and Jay Grdina, Thursday, February 2, 2006 at 9:00 a.m. As you have confirmed, Mr. Grdina will be testifying in both his individual capacity and as the Rule 30(b)(6) representative of Dolce Amore, Inc. Please confirm your clients' availability on these dates, and I shall send you formal deposition notices.

Under the Court's June 21, 2005 Scheduling Order, the parties are required to disclose expert witnesses and final expert reports on or before January 27, 2006. In light of the proposed deposition dates, I believe you previously offered to prepare a stipulation to modify the Scheduling Order. I suggest we stipulate to an extension of the expert disclosure deadline of approximately 60 days -- to March 27, 2006.

Last Wednesday, December 7, we received your clients' unsigned responses to Regan Media's First Set of Interrogatories. As you know, Rule 33(b)(2) requires that your clients' answers "be signed by the person making them." Accordingly, we request that you obtain the signature of your clients verifying these responses.

Finally, this will confirm our agreement to extend the deadline for your clients to respond to Defendants' Request for Production of Documents. I understand that you expect to have the documents next Monday, December 12, and hope you can produce copies for me at that time. If they are not available for production on December 12, please let me know when we can expect them.

Of course, if you have any questions or concerns about the foregoing, or I have misstated our conversations in any way, please call.

Very truly yours,

David J. Bodney

DJB:beg

# EXHIBIT C

FYI

-----Original Message-----
**From:** Roger Hall [mailto:RHall@rcdmlaw.com]
**Sent:** Wednesday, December 14, 2005 3:20 PM
**To:** Bodney, David
**Subject:** RE: Deposition dates

Thank you for your understanding, David.

I am in California for depos tomorrow and Friday, but will draft the stipulation when I return.

Regarding the document production, I anticipated your inquiry, and have already sent an e-mail to attorney Gary Crandell asking him when we will be receiving the documents. As soon as I hear from him, I will let you know.

- Roger

**From:** Bodney, David [mailto:DBodney@steptoe.com]
**Sent:** Wednesday, December 14, 2005 3:16 PM
**To:** Roger Hall
**Subject:** RE: Deposition dates

Roger:

In deference to your clients' Super Bowl-related plans, we can push their depositions to Feb. 14 and 16. (My schedule for the week of Feb. 6 would make depositions difficult then.) I cannot stipulate, however, to any further continuances of these depositions.

If these dates are acceptable, as I trust they will be, please let me know, and I shall prepare formal notices. As we previously discussed, will you please draft a suitable stipulation with respect to the change in expert disclosure deadline, occasioned by your clients' needs to postpone this deposition discovery?

I note, too, that we still have not received your clients documents. When can we expect them? (You indicated that you expected to have them in hand last Monday.) Please let me know -- I would prefer to avoid filing a motion to compel their production.

Thanks.

David

This confidential communication is intended only for the listed recipient(s) above, and may contain legally privileged

information. If you are not a listed recipient, please refrain from reading the accompanying electronic communication, and from copying, forwarding or otherwise distributing this confidential communication to anyone. Please contact me immediately if you have received this communication in error. Thank you.

David J. Bodney
Steptoe & Johnson LLP
201 E. Washington St.
16th Floor
Phoenix, AZ USA 85004-2382

602.257.5212 (phone)
602.257.5299 (fax)
602.315.1547 (cell phone)
dbodney@steptoe.com (email)

STEPTOE & JOHNSON LLP

Washington DC • Phoenix • Los Angeles • New York • London • Brussels

-----Original Message-----
**From:** Roger Hall [mailto:RHall@rcdmlaw.com]
**Sent:** Wednesday, December 14, 2005 9:57 AM
**To:** Bodney, David
**Subject:** Deposition dates

Hi David,

I heard back from Jenna and Jay regarding the proposed depo dates. Unfortunately, those dates flank Super Bowl Sunday, and they have numerous commitments already scheduled in Detroit in conjunction with the game. What is your availability the following week?

- Roger
Roger W. Hall
RENAUD COOK DRURY MESAROS, PA
Phelps Dodge Tower
One North Central Avenue, Suite 900
Phoenix, AZ 85004
Telphone: (602) 256-3056
Fax - main: (602) 307-5853
Fax - direct: (602) 262-3256

NOTICE OF CONFIDENTIALITY: This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any use, dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by e-mail (by replying to this message) or by telephone (noted above), and permanently delete the original and any copy of any e-mail and any printout thereof. Thank you for your cooperation with respect to this matter.